IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 15-00293 SOM |
|---|---|---|
| Plaintiff, | ) ) | **ORDER DENYING DEFENDANT'S** |
| vs. | ) ) | **MOTION TO SUPPRESS STATEMENTS MADE IN TELEPHONE** |
| MICHAEL WALKER, | ) ) | **CONVERSATIONS WITH JULIE** |
| Defendant. | ) ) | **PLOTZ** |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS
MADE IN TELEPHONE CONVERSATIONS WITH JULIE PLOTZ**

**I.    INTRODUCTION.**

Defendant Michael Walker is charged with murdering or aiding and abetting in the murder of his wife and with conspiring to murder her.  Before the court is a motion to suppress statements made to his wife's sister, Julie Plotz.  The motion asserts that the statements implicate the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), as well as the Sixth Amendment right to counsel.  *See* Walker's Memorandum in Support of Motion to Suppress, ECF No. 148-1, PageID #s 835-38.

Walker made the statements in telephone conversations with Plotz on March 13, 2015, and April 25, 2015.  The conversations were recorded.  *See id.*  Walker notes that, before those telephone conversations, he had invoked his right to counsel, and that Plotz was acting as a Government agent in

1

eliciting statements from him without counsel present, in violation of the Fifth Amendment. *See id.*, PageID #s 835-36.

Walker also contends that his Sixth Amendment right to counsel had already attached at the time Plotz elicited those statements.

This court concludes that Walker's right to counsel under *Miranda* and the Fifth and Sixth Amendments was not violated. The motion to suppress statements is denied.

**II.     FINDINGS OF FACT.**

The court makes the following findings of fact based on a preponderance of the evidence. The evidence was presented in court filings; no live testimony was received in connection with this motion. The findings are identified by letters of the alphabet for ease of reference in future proceedings.

A.   On November 15, 2014, Walker returned home after working a night shift as an Army medic at Tripler Army Memorial Hospital to find his wife, Catherine Walker, stabbed to death at their home in a military housing complex on Oahu. He called 911.

B.   Agents from the U.S. Army Criminal Investigation Division reported to the house. Agent Ian Mitchell spoke with Walker, then asked Walker to come with him to the station to answer further questions.

C. At the station, about mid-way through the questioning, Agent Mitchell presented Walker with a Statement of Rights and Waiver form. Agent Mitchell reviewed Walker's rights under the Fifth Amendment and *Miranda* with him. At some point on November 15, 2014, after Walker had been read his *Miranda* rights, Walker invoked his right to remain silent and his right to counsel. Walker was not arrested or charged with anything at the time.

D. In the months that followed, law enforcement contacted Walker's counsel on several occasions about matters pertaining to the investigation into his wife's death.

E. Law enforcement also contacted Plotz, Catherine Walker's younger sister, who was one of the last people to speak with Mrs. Walker before she died. After her sister's death, Plotz, who lived in Arizona, spoke with Walker both in person and over the telephone.

F. At Mrs. Walker's funeral in New York in late November 2014, Plotz spoke to Walker about her sister's death, noting the fact that there were no signs of a forced entry into the house and that the weapon used appeared to have been a kitchen knife from the house. According to Plotz, Walker told her that they did not have any enemies and that he could not think of anyone who would have harmed his wife.

G. Several weeks after the funeral, Plotz learned that Walker had just posted an online dating profile. Based on her previous conversations with Walker and his new online dating profile, Plotz suspected that Walker had been involved in her sister's death.

H. On March 10, 2015, Plotz spoke with law enforcement about assisting in the investigation into her sister's death. She orally agreed to make two telephone calls from Arizona to Walker, which were recorded.

I. The first call was on March 13, 2015. Walker was living in an apartment in Hawaii at the time, and Plotz reached him at home. They spoke for about an hour and twelve minutes.

J. The second call was on April 25, 2015. Plotz again called Walker at home and spoke with him for about twenty-four minutes.

K. During both calls, Plotz asked Walker about her sister's death. During the first conversation, Walker told Plotz that there was a part of him that did not want law enforcement to learn who had killed his wife.

L. Neither Walker nor his counsel at the time knew that Plotz's calls were part of the FBI's investigation and that the telephone calls were being recorded.

M. At the time of the telephone calls, Walker had not been charged, arrested, or indicted. A Superseding

Indictment naming Walker as a co-defendant was filed on November 4, 2015 (the original indictment had not named him).

**III.     CONCLUSIONS OF LAW.**

   **A.   Walker's Fifth Amendment Right to Counsel Was Not Violated.**

   1.   Walker asserts that his right to counsel under *Miranda* was violated during the recorded telephone conversations because his counsel was not present. ECF No. 148-1, PageID #s 835-36. Walker invoked his right to counsel on November 15, 2014, and did not thereafter waive that right. Counsel represented him during his communications with law enforcement for several months after he invoked his right.

   2.   In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held that a person in custody is entitled to procedural safeguards before being questioned. In the absence of such safeguards, the prosecution may not use what it learns through its interrogation. *Id.* This holding was premised on the Fifth Amendment's privilege against self-incrimination, which the Supreme Court reasoned is protected when a person is adequately and effectively advised of his or her rights. *See id.* at 467. *Miranda* warnings specifically advise a person in custody that he has a right to remain silent, that anything he says may be used against him in court, that he has the right to an attorney before and during questioning, and

that an attorney will be appointed if he cannot afford one. *See id.* at 479.

   3. *Miranda* applies to "custodial interrogation," which means "questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) (quoting *Miranda*, 384 U.S. at 444); *see also Beckwith v. United States*, 425 U.S. 341, 348 (1976) (observing that the "entire interview [of defendant] was free of coercion"). Thus, if there is no "custodial interrogation," there can be no Fifth Amendment violation. *United States v. Kenny*, 645 F.2d 1323, 1338 (9th Cir. 1981).

   4. In *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980), the Supreme Court concluded that for law enforcement statements to be considered "interrogation," they "must reflect a measure of compulsion above and beyond that inherent in custody itself." Voluntary statements do not constitute interrogation. *Id.* The Supreme Court defined "interrogation" to include "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301.

5. As the Ninth Circuit recognized in *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1981), "not every question is an interrogation. Many sorts of questions do not, by their very nature, involve the psychological intimidation that *Miranda* is designed to prevent." "The test is an objective one; the subjective intent of the police is relevant but not conclusive." *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006) (quoting *Booth*, 669 F.2d at 1238).

6. On March 13, 2015, and April 25, 2015, when Plotz called Walker from Arizona, Walker was at home and not in custody.

7. "[N]noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where 'the behavior of . . . law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined.'" *Beckwith*, 425 U.S. at 347-48 (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961). However, the record before this court demonstrates that Plotz's questioning of Walker was not coercive. Although Plotz may have been trying to get Walker to confess or make incriminating statements, Plotz's subjective intent is not conclusive of whether her questions were coercive. Nothing in the record suggests coercion or overbearing behavior. Instead, Walker appears to

have voluntarily spoken to Plotz, as reflected by the length of time of the telephone conversations. Walker could have refused to answer Plotz's calls, refrained from saying anything relating to his wife's death, or ended the calls quickly. Both telephone conversations between Plotz and Walker were free of coercion.

8. Because the preponderance of the evidence demonstrates that there was no "custodial interrogation," no Fifth Amendment violation is in issue with the calls Plotz made to Walker.

> **B. Walker's Sixth Amendment Right Was Not Violated Because It Had Not Yet Attached When Plotz Called Him.**

1. Walker argues that his Sixth Amendment right to counsel was violated when Plotz questioned him outside the presence of his attorney. ECF No. 148-1, PageID #s 836-87. While acknowledging that charges had not yet been filed at the time of Plotz's calls, Walker says that he had availed himself of his right to counsel and that his Sixth Amendment right had attached.

2. The Sixth Amendment of the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. A defendant's right to counsel attaches in a criminal prosecution after adversarial judicial proceedings have begun. *See Rothergery v.*

*Gillespie Cty.*, 554 U.S. 191, 213 (2008); *see also Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (noting "right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against" a defendant). The Supreme Court of the United States has held that a defendant's Sixth Amendment right to counsel "applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothergery*, 554 U.S. at 194.

        3.    The Ninth Circuit has reiterated that the Sixth Amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Charley*, 396 F.3d 1074, 1082 (9th Cir. 2005) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)); *see also United States v. Hayes*, 231 F.2d 663, 675 (9th Cir. 2000) (noting that "the Supreme Court, this court, and every other circuit to consider a similar issue" have applied this "clean and clear rule," and that the Ninth Circuit is "loath to engraft some new, pre-indictment proceeding onto the rule"). The Supreme Court has characterized an "adversarial judicial proceeding" in which "the accused is confronted, just as at trial, by the procedural system, or by his expert adversary, or by both in a situation where the

9

results of the confrontation might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Gouveia*, 467 U.S. 180, 189 (1984). The Sixth Amendment right to counsel thus attaches in the "critical stages in the criminal justice process" when the government commits to prosecuting its case. *Maine v. Moulton*, 474 U.S. 159, 170 (1985).

               4.    The Ninth Circuit has recognized several circumstances in which a defendant's Sixth Amendment right to counsel does not attach. In *Charley*, the Ninth Circuit concluded that a defendant's right to counsel is not triggered until he or she initially appears in federal court. *See Charley*, 396 F.3d at 1082. In *Anderson v. Alameida*, 397 F.3d 1175 (9th Cir. 2005), the Ninth Circuit stated that "a police inspector filing a complaint seeking an arrest warrant is not a critical stage that commits the prosecutor to trial" and ultimately concluded that no right to counsel attaches at arrest or at an extradition hearing. *Id.* at 1180. Similarly in *United States v. Pace*, 833 F.2d 1307 (9th Cir. 1987), the Ninth Circuit held that the defendant's Sixth Amendment right to counsel "did not attach upon the filing of the complaint by the FBI, the issuance of the warrant of arrest, or [the defendant's] arrest." *Id.* at 1312.

5. In *United States v. Kenny*, 645 F.2d at 1338, the Ninth Circuit further said, "Where a case is still in the investigative stage, or in the absence of a person's being charged, arrested, or indicted, such adversary proceedings have not yet commenced, and thus no right to counsel has attached." *Id.*

6. At the time of the recorded conversations, Walker had not yet been charged, arrested, or indicted. Plotz's recorded telephone calls were part of the FBI's ongoing investigation into the murder of Catherine Walker and cannot be said to have been a "critical stage" of the prosecution that committed the Government to trial against Walker. *See Anderson*, 397 F.3d at 1180. Thus, at the time Walker made statements to Plotz during the recorded telephone calls, his Sixth Amendment right had not yet attached.

7. The Ninth Circuit has noted that deeming a right to counsel to attach to noncustodial investigative activities too early "would severely cripple the use of undercover methods to investigate crimes" because "[t]hose engaged in ongoing criminal activity would be encouraged to obtain 'house counsel,' who would have to be informed prior to government use of informants in the presence of the clients." *Kenny*, 645 F.2d at 1338. "[T]his would largely destroy the

effectiveness of such informants" and others who have agreed to assist law enforcement in certain investigations. *Id.*

8. For Sixth Amendment purposes, Walker's right to counsel had not attached in March or April, 2015. Walker had not then been named as a co-defendant and had not been arrested.

9. The Sixth Amendment does not require suppression of any statements Walker made during the telephone calls to Plotz.

**IV. CONCLUSION.**

This court denies Walker's motion to suppress statements made to Plotz during the recorded telephone conversations on March 13, 2015, and April 25, 2015.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 1, 2017.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Michael Walker*, Crim. No. 15-00293 SOM; ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS MADE IN TELEPHONE CONVERSATIONS WITH JULIE PLOTZ.